**In re GRAND JURY PROCEEDINGS.**

**Jane DOE, Witness, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 88–15478.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 21, 1988.

Decided Dec. 16, 1988.

Jerrold M. Ladar, San Francisco, Cal., for appellant.

John F. Peyton, Asst. U.S. Atty., Honolulu, Hawaii, for appellee.

Before FARRIS, CANBY and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Jane Doe, a foreign citizen, appeals a contempt citation for refusing to testify before a federal grand jury. Two years ago, Doe testified before a grand jury in the Eastern District of Virginia. In May, a new grand jury, conducting a separate but related investigation, summoned Doe before it in Honolulu. Doe refused to testify, asserting her Fifth Amendment privilege against self-incrimination and a due process right to a copy of her prior grand jury testimony. The district court granted her limited use immunity from domestic prosecution but denied her motion for a copy of the transcript.[1] Doe continued in her refusal to testify and was cited for civil contempt. She filed an expedited appeal.

In her papers, Doe presented two arguments. First, Doe claimed that she fears prosecution by her own government and that a reasonable fear of foreign prosecution justifies an assertion of the Fifth Amendment privilege. Second, she argued that our rule in *Bursey v. United States*, 466 F.2d 1059, 1080 (9th Cir.1972), modeled on Fed.R.Crim.Pro. 16(a), compels the trial court to permit her to obtain a copy of her prior grand jury testimony.

Because Doe's second contention appeared to have substantial merit, we scheduled oral argument limited to that issue.[2] The question was, essentially, whether an individual who had previously testified before one grand jury and had been summoned to testify again on the same subject matter before another could be denied a copy of her earlier testimony in the absence of a showing by the government of "some particularized and substantial reasons why [a copy] should not be allowed in a particular case." *Bursey*, 466 F.2d at 1080 (quoting *United States v. Projansky*, 44 F.R.D. 550, 552 (S.D.N.Y.1968)).[3]

During oral argument, the government acknowledged that the term of the grand jury—and thus the contempt citation—had lapsed. The government advised the court that there is a substantial likelihood that a new grand jury will soon investigate the same subject matter and will again attempt to call Doe to the stand.

■ In light of the above, we are now compelled to hold that the "case and controversy" requirement of Article III bars resolution of the issues presented in this appeal. With the expiration of the grand jury's tenure, the civil contempt order, which effectively ends either with the close of the grand jury or with the purging of the contempt, lacks further effect. *United States v. Powers*, 629 F.2d 619 (9th Cir. 1980). Since our jurisdiction extends only to live cases and controversies, we cannot address questions of law that have been rendered merely theoretical by the passage of events. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976). Such issues are moot.

---

**1.** The court did permit Doe and her attorney to inspect her prior testimony in the United States Attorney's offices but subject to strict limitations; "both counsel and [Doe] are barred from making any notes as to what she may have said theretofore."

**2.** In light of *In re Weir*, 495 F.2d 879 (9th Cir.) *cert. denied*, 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974) and *In re Federal Grand Jury Witness*, 597 F.2d 1166 (9th Cir.1979), we concluded that oral argument before a three judge panel on the first issue would be futile.

**3.** The government did not claim that any particularized or substantial reasons existed. Instead, notwithstanding *Bursey*, it relied on the argument that it is within the district court's discretion to determine whether a witness may obtain a copy of a transcript. Alternatively, the government claimed that permitting a witness to inspect a transcript, regardless of its length, satisfies the "concepts of fundamental fairness" articulated in (*Bursey*, 466 F.2d at 1080).

■ The government urges that we reach the merits of this case because the claims involved are capable of repetition yet evading review. *See Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). This exception to the rule against mootness applies when two elements coexist. First, the challenged action must be of inherently short duration, a period too brief for effective judicial review; second, the party raising the challenge must have a reasonable expectation that he or she will again be subjected to the same type of action. *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348–49, 46 L.Ed.2d 350 (1975) (per curiam); *Wiggins v. Rushen,* 760 F.2d 1009, 1011 (9th Cir.1985).

In this case, the government concedes that a new grand jury will soon be impaneled to continue the investigation. Doe has a reasonable expectation that she will be recalled before a grand jury and that the same due process and Fifth Amendment issues will arise. While the second prong of the test is thus satisfied, the government cannot show that the limited duration of the contested action is likely to frustrate effective judicial review. Although the terms of grand juries are frequently short, current statutory procedures are designed to ensure that if Doe is called to testify again, her claims can be litigated in a timely fashion. In 1970, Congress passed 28 U.S.C. § 1826(b) (the "recalcitrant witness" statute) which provides for an expedited appeal when an individual is held in contempt for refusing to testify. "Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal." Congress has thus provided a mechanism that makes it possible for recalcitrant witness claims to be adjudicated effectively during the pendency of a grand jury. Although, in some instances, the contemnor may be forced by circumstances to file his or her appeal near the end of the grand jury's tenure, that prospect seems unlikely in Doe's case, and, in any event, the bare possibility that this might occur cannot bring her case under the "capable of repetition yet evading review" exception.

Nonetheless, the government contends that *Bursey* reaches the opposite result and is controlling. Under ordinary circumstances, the government would be correct, and we would be bound by our prior decision. The procedural facts of *Bursey* are substantially identical to those in this case. The factual distinctions between the cases, such as the number of grand juries involved and their locations, do not affect our analysis. In *Bursey,* we concluded that a narrow interpretation of mootness and justiciability doctrines should not bar resolution of the issues when there was a substantial possibility that the same appellants would be hauled before another grand jury in the near future. *Id.*

In the absence of intervening events, this precedent would bind us on the mootness question. A legislative change, however, renders this aspect of *Bursey* no longer applicable. Our analysis in *Bursey* was based on the existence of an appellate process that inhibited effective judicial review. "Implicit in our decision was the consideration that at that time there was no method of prompt appellate testing of similar contempt orders during the life of the grand jury." *In re Grand Jury Proceedings,* 760 F.2d 1490, 1492 (9th Cir.1985).[4] The appeal in *Bursey* was filed just weeks before the effective date of the recalcitrant witness statute. *Bursey,* 466 F.2d at 1088 n. 22. Appellant's claims thus fell under the sometimes painfully slow procedures of a normal appellate review: Bursey's appeal took approximately twenty-one months, a time span longer than the length of an average grand jury investigation. Under

---

4. Dictum in *In re Grand Jury Proceedings* suggests that, in *Bursey,* we may have relied on the importance of the underlying constitutional issues as a reason for reaching the merits. While *Bursey,* so read, would be difficult to harmonize with intervening Supreme Court precedent on

mootness, we conclude that *Bursey* focused its jurisdictional analysis on the ineffectiveness of appellate review in recalcitrant witness cases and not on the relative importance of the underlying issues. *Bursey,* 466 F.2d at 1088–89.

that regime, we reasonably concluded that our resolution of Bursey's claims would avert a long, frustrating and ultimately pointless process of aborted litigation. *Id.* at 1089. However, with the advent of the expedited appeal statute, the concerns that motivated our decision in *Bursey* are no longer valid.

We are now able to review most recalcitrant witness cases in a timely manner, and in the few instances, such as this one, which arise at the end of a grand jury's term, if the government recalls the witness before the next grand jury we can do so before the end of that term. Consequently, *Bursey*'s analysis regarding mootness in recalcitrant witness cases is no longer valid, and Doe's appeal does not fall under any exception to the mootness rule. *See United States v. Maybusher,* 735 F.2d 366, 371 n. 1 (9th Cir.1984) (panel may reexamine prior decision of three-judge panel if intervening events have undermined validity of earlier case). The contempt citation must be vacated as moot.

REVERSED AND REMANDED FOR VACATION OF THE ORDER OF CONTEMPT